### Lionel Bourgon, Administrator of the Estate of Gaetan Louis Bourgon v. Farm Bureau Mutual Insurance Company

[270 A.2d 151]

No. 7-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 6, 1970

*Latham & Eastman,* Burlington, for Plaintiff.

*Wick, Dinse & Allen,* Burlington, for Defendant.

**Barney, J.** The insured drowned when the "bush-buggy" he was driving on the frozen surface of Lake Dunmore went through the ice. The plaintiff, administrator of his estate, is seeking recovery of the death benefit, payable under a certain automobile liability insurance policy issued by the defendant insurance company, now doing business as the Concord General Mutual Insurance Company.

The defendant's refusal to pay is based on its view of the measure of coverage as determined by the following two policy provisions:

COVERAGE A—DEATH INDEMNITY: To pay the principal sum stated in the schedule in the event of the death of the insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while in or upon

or while entering into or alighting from, or through being struck by, an automobile . . . .

AUTOMOBILE DEFINED : With respect to this insurance the word "automobile" means a land motor vehicle or trailer not operated on rails or crawler treads, but does not mean: (1) a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads, or (2) a land motor vehicle or trailer while located for use as a residence or premises and not as a vehicle.

The vehicle referred to as a "bush-buggy" was actually a stripped-down Volkswagen. According to the findings, there remained of the original automobile the chassis, wheels and tires, steering column and wheel, front seats and seat belts, engine and fuel tank. It had no lights, windshield or fenders, and nothing in front of the two seats except a steering column supported by a bracket. It was not registered and could not pass the Vermont motor vehicle inspection requirements. It was not ordinarily operated on the highways, but in woodland areas, and was towed from place to place over the highway.

The findings also point out that this vehicle had at one time been registered and operated as an ordinary automobile, before the removal of body parts. The trial court found it to be definable as a "land motor vehicle" not operated on rails or treads, originally designed for highway use, although in its later condition intended for use principally off public roads.

With respect to the place of operation, the trial court found that Lake Dunmore, when frozen over, came within the definition of "highway" in 23 V.S.A. § 4(7). The defendant was ordered to pay the death indemnity provided for in the policy.

Thus, two issues were presented in this case. The first related to the propriety of designating the vehicle involved as an "automobile", under the terms of the policy. The second involved the defining of the frozen surface of Lake Dunmore as a public road. If the plaintiff prevailed on either of these issues, coverage would be established.

■ We cannot construe the policy definitions so narrowly, that the mere fact that a vehicle, because of some minor defect, could not pass inspection, would be enough to bar recov-

ery. As we view it, there must be a substantial change in identity from a motor vehicle in the usual sense to equipment designed for use principally off public roads. Unquestionably, this vehicle was originally designed as an ordinary automobile. This identity it had not truly lost in modification, it has simply been stripped down for its new "bush-buggy" use. Its unavailability for ordinary highway use was not due to any basic structural change but rather to its equipment shortcomings. In this view of the matter, it was a "land motor vehicle" within the contemplation of the policy.

■ . Moreover, the statutory definition of "highway" and "public road" in 23 V.S.A. § 4(7) includes: "All parts of any bridge, culvert, roadway, street, square, fairground or other place open temporarily or permanently to public or general circulation of vehicles, and shall include a way laid out under authority of law." Since no definition contravening the statutory description is given in the policy, its provisions will be taken to be governed by the applicable statute. As a place "open temporarily or permanently to public or general circulation of vehicles" the frozen surface of Lake Dunmore qualifies as a "public road". *State* v. *Hallock,* 114 Vt. 292, 297, 44 A.2d 326.

*Judgment affirmed.*